# In re WASHINGTON PUBLIC POWER SUPPLY SYSTEM SECURITIES LITIGATION.

## MDL No. 551.

United States District Court,
W.D. Washington,
Second (Seattle) Division.

Dec. 5, 1985.

---

Paul M. Bernstein, Chairperson, Bernstein, Litowitz, Berger & Grossman, New York City, Greenfield, Chimicles & Lewis, Richard D. Greenfield, Haverford, Pa., for plaintiff Henry Puchall.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiff Joseph Harris.

James R. Irwin, Shidler, McBroom & Gates, Seattle, Wash., for plaintiffs David Gold and Marvin Frankel.

Michael Mines (Ex-officio), Betts, Patterson & Mines, Seattle, Wash., for plaintiff Chemical Bank.

Richard A. Cirillo, Rogers & Wells, New York City, for defendants.

Graham & Dunn, Bruce M. Pym, Seattle, Wash., for various class plaintiffs.

Rabin & Silverman, Allan K. Peckel, Kaufman, Malchman & Kirby, P.C., New York City, for plaintiffs David Gold and Marvin Frankel.

Berger & Montague, P.C., David Berger, Philadelphia, Pa., for plaintiff Rosalyn Mirotznik.

Wolf Popper Ross Wolf & Jones, Stephen D. Oestreich, New York City, for plaintiff Morris Massry.

Goodkind, Wechsler & Labaton, Stuart D. Wechsler, New York City, and Wolfstone, Panchot, Bloch & Kelley, J. Porter Kelley, Seattle, Wash., for plaintiff Paul J. Bonseigneur.

Barrack, Rodos & Bacine, Gerald Rodos, Philadelphia, Pa., for plaintiff Dr. Howard Sheldon.

Schoengold & Sporn, P.C., Samuel P. Sporn, New York City, for plaintiff Jack Schroeder.

David B. Gold, P.A., David B. Gold, San Francisco, Cal., Pomerantz, Levy, Haudek, Block & Grossman, Stanley Grossman, Stephen P. Hoffman, New York City, Thomas M. Geisness, Inc., P.C., James A. Doherty, Seattle, Wash., for plaintiff Leonard Laub.

Meredith & Cohen, P.C., Joel C. Meredith, Philadelphia, Pa., Alan Neigher, Westport, Conn., for plaintiff Louis Brazen and 776 Broadway.

Wolf Haldenstein Adler Freeman & Herz, Daniel W. Krasner, New York City, for plaintiff-intervenor Schein.

Harvey Greenfield, Kaufman, Malchman & Kirby, Irving Malchman, New York City, Franco, Asia, Bensussen & Finegold, Benjamin S. Asia, Seattle, Wash., for plaintiff Bryna Stepak.

Wolf, Block, Schorr & Solis-Cohen, Barry F. Schwartz, Philadelphia, Pa., for plaintiff Danny S. Fruchter.

Stull, Stull & Brody, Jules Brody, New York City, for plaintiff Lawrence Zucker.

Sachnoff Weaver & Rubenstein, Ltd., Lowell E. Sachnoff, Chicago, Ill., for Martin Woolin.

Saveri & Saveri, Guido Saveri, O'Brien & Hallisey, A Professional Corp., Jeremiah F. Hallisey, San Francisco, Cal., for plaintiff The Doctors Co.

Much Shelist Freed Denenberg Ament & Eiger, P.C., Lawrence H. Eiger, Chicago, Ill., for plaintiff Ruth C. Sigmund, Trustee of Arthur W. Sigmund Residuary Trust and the Arthur W. Sigmund Marital Trust.

Bader & Bader, I. Walton Bader, White Plains, N.Y., for Malcolm Pine.

Albert R. Malanca, Donald S. Cohen, Kenneth G. Kieffer, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., Seattle, Wash., for Washington Public Utilities Group.

David F. Jurca, Linda Cochran, Richard White, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Columbia Defendants.

Michael F. Schumacher, Jerome Hillis, Mark Clark, Greg Keller, Hillis, Phillips, Cairncross, Clark & Martin, Seattle, Wash., for Inland Utilities.

Hugo E. Oswald, Jr., Stevan Phillips, Margaret Pageler, Jones, Grey & Bayley, Seattle, Wash., for Wahkiakum defendants.

Larry S. Gangnes, John Tomlinson, H. Peter Sorg, Jr., Lane, Powell, Moss & Miller, Seattle, Wash., for Oregon Public Entities.

Everett B. Clary, Donald Wessling, O'Melveny & Myers, Los Angeles, Cal., for Certain Washington Public Power Supply System Director defendants.

Dennis K. Bromley, George Sears, Robert Gordon, Pillsbury, Madison & Sutro, San Francisco, Cal., for Snohomish Group.

John D. Lowery, Thomas Burt, Thomas Hamerlinck, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for Small Utilities Group.

Malcolm S. Harris, John Mericle, Harris, Mericle, Orr & Bariault, Seattle, Wash., for Member Non-Participants.

Camden M. Hall, Foster, Pepper & Riviera, Seattle, Wash., for Member Non-Participants and City of Seattle, Wash.

Robert D. Stewart, David J. Lenci, Culp, Dwyer, Guterson & Grader, Seattle, Wash., for Washington Public Power Supply System.

Mark C. Rutzick, U.S. Dept. of Justice, Portland, Or., for U.S.—Bonneville Power Admin.

Irwin J. Sugarman, Robert Abrahams, Schulte, Roth & Zabel, New York City, for Law Firm defendants.

Otto G. Klein, III, Peter Danelo, Syrdal, Danelo, Klein & Myre, Seattle, Wash., for Engineer defendants.

Herbert M. Wachtell, Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City, for Underwriter defendants.

James J. Hagan, Robert Woody, Simpson, Thacher & Bartlett, New York City, for Blyth Eastman Paine Webber, Inc.

## ORDER

WILLIAM D. BROWNING, District Judge.

This multidistrict securities litigation involves numerous claims brought by various plaintiffs who purchased Project 4/5 bonds issued by the Washington Public Power Supply System to finance the construction of two nuclear power plants. After bonds with a face value of $2.25 billion dollars were sold, serious problems led to the termination of both projects and resulted in default by the Supply System on its bond obligations. Claims against several hundred defendants under both federal and state law are made in complaints filed by class plaintiffs and by Chemical Bank. These actions have been consolidated for pretrial purposes. Only the motions to dismiss the federal claims will be considered in this Order. The defendants have aligned themselves into fifteen groups with lead counsel submitting briefs on behalf of each group.

The procedural posture of the various motions to dismiss now before the Court is unique. All of these motions were filed in the fall of 1983 and ruled on in December, 1983, by the Honorable Richard M. Bilby. In January of 1985 Judge Bilby decided to recuse himself from the case based on his discovery that his father and stepmother held $100,000. in WPPSS Project 3 bonds. After the case was transferred to the undersigned, an order vacating the substantive rulings of the prior Court, based on a technical application of 28 U.S.C. § 455, was entered. It was my conclusion that in litigation as massive and complex as this, a record as unimpeachable as possible was essential. Therefore, although there was never any allegation or finding of actual bias on the part of Judge Bilby, I undertook to revisit the substantive motions previously ruled upon.

Parties were given the opportunity to re-urge any motions that had resulted in vacated orders. An independent review of the record on these re-urged motions, including previously filed moving and responding papers and memoranda and transcripts of applicable hearings, was conducted. Parties were given leave to submit, without argument, any additional authority decided since the original pleadings were filed. The Court advised the parties that additional briefing or argument would be ordered if necessary. Following are the Court's rulings on these federal claims.

*Rule 9(b)*

■ All of the defendants move to dismiss the federal claims under Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity. It is clear that Rule 9(b) requirements should be applied to the claim based on § 10(b) of the 1934 Act. *Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir.1973); *Hokama v. E.F. Hutton*, 566 F.Supp. 636 (C.D.Cal.1983); *McFarland v. Memorex Corp.*, 493 F.Supp. 631 (N.D.Cal.1980).

It is not clear that Rule 9(b) applies to the claim brought under § 20 of the 1934 Act. The cases cited by defendants in support of applying the Rule 9(b) requirements to § 20 are open to differing interpretation in that regard. In *Hudson v. Capital Management Int'l, Inc.*, 565 F.Supp. 615 (N.D.Cal.1983), certain § 20 claims were dismissed, but the court does so on the

basis of failure to plead control status. Nowhere in that opinion does it state that Rule 9(b) applies to § 20. Similarly in *McFarland v. Memorex Corp., supra* and *Hokama v. E.F. Hutton, supra,* the courts discuss the sufficiency of allegations of control person status, but do not explicitly apply Rule 9(b) standards. Confusion has arisen about this issue because courts tend to discuss the pleading requirements for securities claims together. Technically, the strict pleading requirements of Rule 9(b) are probably properly applied to the § 10(b) and Rule 10b–5 claims, but not to the § 20 claim. The discussion below will indicate, however, that the § 20 claim would survive even the Rule 9(b) standard.

The issue of whether Rule 9(b) applies to the claim based on § 17(a) of the 1933 Act is more problematic, and will be reserved pending discussion later in this opinion of the more basic question of whether or not there is a private right of action at all under that section of the federal securities laws.

In support of their Rule 9(b) arguments, the defendants cite a series of Second Circuit cases that adopt an expansive interpretation of Rule 9(b). *See, e.g. Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111 (1982); *Ross v. A.H. Robins,* 607 F.2d 545 (1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The Ninth Circuit has adopted a more relaxed interpretation of the requirements of Rule 9(b) that is more in keeping with the spirit of the liberal federal rule of notice pleading and consistent with Rule 8(a). *See, e.g., Walling v. Beverly Enterprises, supra; Bosse v. Crowell, Collier & MacMillan,* 565 F.2d 602 (9th Cir.1977); *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir.1977).

■ Under these Ninth Circuit cases, Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary matter." 2A J. Moore, *Federal Practice* § 9.03, at 1930 (2d ed. 1972), cited in *Wall-*

*ing v. Beverly Enterprises,* 476 F.2d at 393. Although mere conclusory allegations of fraud are not sufficient, it is an adequate averment where plaintiffs have stated the time, place and nature of the alleged fraudulent activities. The Complaint must sufficiently identify the circumstances constituting the fraud to allow the defendants to adequately prepare their answers. The unique procedural posture of the present litigation, in which these motions to dismiss are being considered after discovery has already been underway for almost a year, does not impose on plaintiffs pleading requirements that would reflect the fruits of such discovery. Those requirements are better left to future dispositive motions.

Second Amended Complaints were filed by both the class plaintiffs and Chemical Bank in response to Judge Bilby's initial rulings on these motions to dismiss. To the extent the Second Amended Complaints reflect more detailed averments, it would be a waste of time and effort for the Court to rule on the basis of deficiencies in the First Amended Complaints that were corrected by changes in the Second Amended Complaints. Therefore the Court will rule on the Rule 9(b) motions to dismiss on the basis of the allegations in the Second Amended Complaints. The briefs filed by defendants in response to both the First and Second Amended Complaints have been considered by the Court.

Many of the defendants claim that the plaintiffs fail to adequately distinguish among the various defendants. Very few of the defendants are named individually in the complaints except for identification purposes. Instead, the defendants are grouped into categories for the substantive allegations, i.e. participants, engineers, underwriters, etc. Defendants cite *Hokama v. E.F. Hutton & Co., Inc., supra,* for the proposition that plaintiffs must specify individuals rather than relying on group allegations. Even in *Hokama,* however, the Court points out that in that case there were not so many individuals as to make

that impracticable. 566 F.Supp. at 646. In *In re Equity Funding Securities Litigation*, 416 F.Supp. 161, 181 (C.D.Cal.1976), a case more like the present litigation, the court held that once a defendant had been identified as part of a category of defendants, it was sufficient to plead group conduct. To hold otherwise in litigation such as that before this Court would produce an absurd and cumbersome result. The complaint is already 140 pages long, and if claims against each defendant had to be separately alleged, the complaint would need to be several hundred pages longer.

Many defendants claim that there is insufficient pleading of scienter. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court established that scienter is an element of a 10b–5 cause of action, but left open the question of whether recklessness satisfies the scienter requirement. *Id.* at 194, n. 12, 96 S.Ct. at 1381, n. 12. The Ninth Circuit, like the majority of other circuits, has held that recklessness will satisfy. *Nelson v. Serwold*, 687 F.2d 278 (1982), Rule 9(b) states that, "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Plaintiffs are entitled to plead scienter in a conclusory fashion. *See, Walling v. Beverly Enterprises, supra; Hokama v. E.F. Hutton & Co., Inc., supra; Hudson v. Capital Management Int'l., Inc., supra.* In their complaints plaintiffs have alleged that all defendants violated the federal securities acts knowingly or recklessly. That is sufficient.

Some defendants claim that plaintiffs have not properly pleaded reliance as a separate element of their claims for relief under the federal securities acts. They argue that this case does not fit into the *Blackie* exception to the requirement for pleading reliance. In *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975), it was held unnecessary to plead reliance where a material representation on which an investor would rely in making an investment was

alleged. Plaintiffs fit squarely within the reliance pleading requirements of these cases when they allege in paragraph 242 that "Had plaintiffs and the members of the Class known of the materially adverse information not disclosed by defendants ... they would not have purchased the Bonds at all, or at the artificially inflated prices which they did."

The complaint is weakest in its allegations regarding principal and aider and abettor liability because plaintiffs claim that all of the defendants are principally and secondarily liable. Alternative pleading is an acceptable form of pleading under the federal rules, however, and dismissal at the pleading stage for such alternative pleading is not called for if done in good faith. *Harmsen v. Smith*, 693 F.2d 932 (9th Cir.1982) sets forth the elements of aider and abettor liability: the existence of an independent primary wrong, actual knowledge of the wrong and the role in furthering it, and substantial assistance in the wrong. The substantial assistance element is another form of causation. *Mendelsohn v. Capital Underwriters*, 490 F.Supp. 1069, 1084 (N.D.Cal.1979). Plaintiffs allege each of these elements against defendants. Although the court in *Hudson v. Capital Management Int'l., Inc., supra,* found that these requirements do not permit aider and abettor liability to extend to failure to disclose, liability for inaction has been permitted under certain circumstances by the Ninth Circuit. *Strong v. France*, 474 F.2d 747 (1973) is the seminal case in the area. Among the circumstances listed in *Strong* as establishing a duty to disclose is "knowing assistance of or participation in a fraudulent scheme ..." 474 F.2d at 752. This is what plaintiffs are alleging.

The focus of most of defendants' 9(b) arguments is the lack of factual specificity. It is certainly true that considerably more detailed factual allegations could have been made in the complaints. At the same time, the plaintiffs do specify, in general terms, the time, place and manner of the allegedly

fraudulent conduct. As stated by the court in *In re Equity Funding Corporation of America Securities Litigation,* 416 F.Supp. at 181, "The Complaint is necessarily general in some respects since it encompasses events, transactions, and conduct that span an eight-year period." Requiring plaintiffs to list the time, place and participants in each instance of fraudulent conduct generally alleged in the complaints in this litigation would defeat the purposes of Rule 8. The allegations of federal securities violations are adequately pleaded to meet the requirements of Rule 9(b). Whether or not these allegations will be able to withstand future dispositive motions is a different issue not presently before this Court.

As to the federal claims, the Second Amended Complaints of both class plaintiffs and Chemical Bank are the operative pleadings. Any defendants dismissed out by the now-vacated order of December 7, 1983, and therefore not included within the Second Amended Complaints remain so dismissed.

*Res judicata and collateral estoppel*

■ Certain defendants[1] argue that litigation of the federal claims in the present action is barred by the judgment in the declaratory action brought by Chemical Bank in Washington state courts.[2] These arguments must be rejected on several grounds.

■ An action for declaratory relief, such as that brought by Chemical Bank in state court, precludes future litigation only of matters declared or actually litigated by the parties and determined in the action. *See Restatement of Judgments, Second,* § 33, Comment C. Plaintiffs are specifically permitted under both federal and Wash-

ington law to seek further relief after an action for declaratory relief is brought. 28 U.S.C. § 2201, RCW 7.24.080.

A situation analogous to the present one is presented in *Gallagher v. Frye,* 631 F.2d 127 (9th Cir.1980), in which the Ninth Circuit reasoned that the unique nature of a manamus action required that different rules of claim preclusion be applied. The Court held that the joinder of all claims that could be brought in the state court as part of the mandamus action was permissive and not compulsory, and thus federal claims not brought in state court were not barred in a subsequent federal action. The special characteristics of a declaratory relief action compel such a conclusion even more strongly than does a mandamus action. It is the conclusion of this Court that res judicata does not apply to the federal claims in this litigation.

Even beyond the unique nature of declaratory judgment actions, it would be absurd to bar a § 10b claim, for which federal jurisdiction is exclusive, on the basis of a state court declaration of contract rights. *See, Clark v. Watchie,* 513 F.2d 994 (9th Cir.1975), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60. To apply res judicata to the § 10b claim would be to deny plaintiffs, in effect, any day in court at all on that claim, since it could not have been brought as part of the action in state court.[3]

■ Certain defendants also argue that collateral estoppel should be applied to preclude litigation of the issue of "control" under the securities laws. Collateral estoppel precludes relitigation of issues that were actually litigated and were necessary to the state court judgment. 1B Moore's *Federal Practice,* § .441(2). In order for

---

1. The Washington Utilities Group, the Small Utilities Group and the Columbia Group.

2. *See Chemical Bank v. Washington Public Power Supply System,* 99 Wash.2d 772, 666 P.2d 329 (1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 2154, 85 L.Ed.2d 510 (1985).

3. The § 17(a) claim presents a somewhat different situation since jurisdiction under that section of the 1933 Act is concurrent in state and federal court. Further analysis of this issue will await determination of whether there is a private right of action under § 17(a).

preclusion to apply, the issue decided in the prior adjudication must be identical with the one presented in the action *sub judice. Clark v. Watchie, supra* at 998.

In *Chemical Bank v. Washington Public Power Supply System,* 99 Wash.2d 772, 666 P.2d 329, 337 (1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 2154, 85 L.Ed.2d 510, the control issue decided by the Washington Supreme Court was "whether the participants retained sufficient control over the project to constitute the equivalent of an ownership interest." Although "control" is not explicitly defined in § 20 of the 1934 Act, it clearly encompasses a much broader definition than "the equivalent of an ownership interest." *See,* Ruder, "Multiple Defendants in Securities Law Fraud Cases," 120 U.Penn.L.Rev. 597, 602 (1972). The Ninth Circuit has cited as a definition of control under the securities statutes, "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person...." *Safeway Portland Employees' Federal Credit Union v. C.H. Wagner & Co.,* 501 F.2d 1120, 1124 n. 17 (9th Cir. 1974). Where the type of control at issue is different, as it is in the *Chemical Bank* state action and the present litigation, collateral estoppel will not be applied to preclude litigation of the control issue.

*Private right of action under § 17(a) of the 1933 Act*

■ All of the defendants have moved to dismiss the claims brought under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), on the basis that there is no implied private right of action under that antifraud provision. I have not asked for additional briefing on this issue because the issues as framed in the memoranda of two years ago are essentially unchanged, and the relevant new cases on both sides of the issue has been cited to the Court.

A determination of whether or not there is at this time a private right of action under § 17(a) in the Ninth Circuit presents some difficulty. Plaintiffs argue that the issue has already been decided favorably by the Ninth Circuit in *Stephenson v. Calpine Conifers II, Ltd,* 652 F.2d 808 (1981), and that this Court is bound by that holding. Defendants counter that the unique circumstances of that case, and the controlling U.S. Supreme Court authority, require this Court to ignore the *Stephenson* case and find that there is not a private right of action under § 17(a).

The precedential value of the *Stephenson* decision is called into question by a number of factors. Beginning with the language of the opinion itself, the analysis in support of the important and controversial position that there is a private right of action under § 17(a) is minimal.

> Neither the Supreme Court nor this circuit has held that a private right of action exists under § 17(a) of the 1933 Act. *Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980), *Bosse v. Crowell, Collier and MacMillan,* 565 F.2d 602, 610 n. 12 (9th Cir. 1977). The Second Circuit in *Kirshner v. United States,* 603 F.2d 234 (2nd Cir. 1978), however, has found such a right of action. Agreeing with Judge Friendly's comments in *SEC v. Texas Gulf Sulfur, Inc.,* 401 F.2d 833, 867 (2nd Cir.1968), the *Kirshner* court said: '... there (is) little practical point in denying the existence of a right under § 17 once it is established that an aggrieved buyer has a private right of action under § 10(b) of the 1934 Act. [cite]'
>
> In light of the minimal differences between § 17(a) of the 1933 Act and § 10(b) of the 1934 Act, we think the reasoning of the Second Circuit is persuasive and find that a private right of action exists under § 17(a). 652 F.2d at 815.

This brief analysis ignores some very important differences between § 17(a) and § 10(b) of the 1934 Act that cast doubt on the conclusion that a private right of action under § 17(a) logically follows from the existence of a private right of action under § 10(b). Although a private right of action

under § 10(b) is well established and not open to dispute, *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), there is a clear split among the circuits on whether such a right exists under § 17(a), *see* cases cited in *Hudson v. Capital Management International, Inc.,* 565 F.Supp. at 626. The Supreme Court has specifically declined to rule on the issue. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). It is therefore surprising that the *Stephenson* Court chose to raise the issue of a private right of action under § 17(a) *sua sponte* and rule on it without the benefit of briefing or argument by counsel.

An important distinction between § 17(a) and § 10(b), not considered by the Court in *Stephenson,* is the standard of conduct that must be alleged. In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) it was clearly established that scienter must be alleged for a claim under § 10(b) of the 1934 Act. In contrast, the standard to be applied in a SEC proceeding under § 17(a) of the 1933 Act was held to be mere negligence in *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). This creates the anomolous situation that a stricter standard is required under § 10(b) than under § 17(a). At least one court has resolved this dilemma by construing *Stephenson* to require a scienter standard to apply to private actions brought under § 17(a). *In re Diasonics Securities Litigation,* 599 F.Supp. 447 (N.D.Cal.1984).

Further difficulties are presented by the absence of any discussion in *Stephenson* of the kind of analysis outlined in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and mandated in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) before a cause of action under a federal statute may be implied. Such an analysis, conducted by the court in *Bruns v. Ledbetter,* 583 F.Supp. 1050, 1053–54 (1984), led that court to conclude that a private right of action under § 17(a) was not intended by Congress and should not be implied by the courts.

Other courts in this circuit have similarly declined to follow the lead of the *Stephenson* decision and have instead held that there is not a private right of action under § 17(a) of the 1933 Act. *See In re Fortune Securities Litigation,* 604 F.Supp. 150 (1984); *Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615 (1983); *but see, Amunrud v. Taurus Drilling Ltd.,* Fed.Sec.L.Rptr. P. 99,649 (D.Mont. 1983). After reviewing these, and a number of cases from other circuits it is clear that the more compelling analyses uniformly come down against finding a private right of action under § 17(a). *See e.g. Sheftelman v. Jones,* 605 F.Supp. 549, 551–52 (N.D.Ga.1984); *Citizens State Bank of Wittenberg v. Continental Assurance Co.,* 598 F.Supp. 1111, 1112–15 (W.D.Wis.1984); *Kimmel v. Peterson,* 565 F.Supp. 476, 482 (E.D.Penn.1983).

A recent Ninth Circuit opinion calls into serious question the reasoning of the court in *Stephenson.* In *Lewis v. McAdam,* 762 F.2d 800 (1985), the Court declined to imply a right of action on behalf of certain shareholders under § 16(b) of the 1934 Act stating,

Had Congress wanted to discourage this practice by conferring standing on shareholders of a parent corporation whose wholly owned subsidiary absorbed the original issuing corporation, it knew how to do so. *Cf. Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–72 [99 S.Ct. 2479, 2486–87, 61 L.Ed.2d 82] (1979) —(refusal to interpret section 17(a) [of the 1934 Act] as creating a private right of action). Accordingly, we conclude that Congress included in the statutory language of section 16(b) all the remedies it deemed appropriate. *See Middlesex*

County Sewerage Authority et al. v. National Sea Clammers Association, et al., 453 U.S. 1, 14–15 [101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435] (1981); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 [100 S.Ct. 242, 246, 62 L.Ed.2d 146] (1979) (where a statute provides a particular remedy, we must be chary of reading others into it). 762 F.2d at 804.

Applying this same reasoning to § 17(a) of the 1933 Act leads this Court to conclude that a private right of action was not intended by Congress and should not be implied by the courts. The claims based on § 17(a) of the 1933 Act are accordingly dismissed.

Since this ruling is in apparent conflict with existing Ninth Circuit authority, and it involves a controlling issue of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the litigation, this ruling is certified for appeal pursuant to 28 U.S.C. § 1292(b).

*Municipal defendants*

The municipal defendants [4] in this litigation raise a number of Constitutional, statutory and common law challenges to the plaintiffs' federal claims. The defendants assert that a private right of action against municipalities cannot be implied under the federal securities statutes. They further argue that various statutory and common law doctrines of governmental immunity preclude liability for any alleged violations of federal law. Finally, municipal defendants argue that the Tenth and Eleventh Amendments to the United States Constitution bar this kind of action against them.

■ The Constitutional challenges are not compelling and will be addressed first.

The Eleventh Amendment provides that unconsenting States are immune from private damage suits brought in federal court. It is well established, however, that local governmental units are not the same as the State for Eleventh Amendment purposes. *Community Communications Co., Inc. v. City of Boulder, Colorado,* 455 U.S. 40, 53, 102 S.Ct. 835, 841, 70 L.Ed.2d 810 (1982); *Monell v. New York City Dep't. of Social Serv.,* 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978); *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 392, 98 S.Ct. 1123, 1126, 55 L.Ed.2d 364 (1978). Since there has been no allegation that any State's treasury could be liable if Plaintiffs are successful, the reasoning of the Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) is inapplicable.[5] The municipal defendants here are not so closely identified with their states as to be afforded the protection of the Eleventh Amendment.

■ The municipal defendants rely more strongly in their briefs on the prohibitions of the Tenth Amendment. The defendants' analyses of this Amendment, contained in memoranda filed over two years ago, is called into question by the recent case of *Garcia v. San Antonio Metropolitan Transit Authority,* —— U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). I have not called for rebriefing of this issue because the *Garcia* case merely lends further support to the conclusion that the Tenth Amendment does not preclude application of the federal securities laws to the municipal defendants here. (Whether the statutes themselves preclude such application is a separate issue that will be discussed below.)

---

**4.** The public defendants in this litigation, with the exception of the Bonneville Power Administration, a federal agency, are all municipal corporations under their respective state laws. They include the Washington Public Power Supply System, nine Washington cities, nineteen Washington public utility districts, one Washington irrigation district, seven Oregon cities, four Oregon public utility districts, and five Idaho cities. A number of individuals who served in official capacities in these municipal corporations are also defendants.

**5.** In fact, RCW 43.52.374(2) specifically disavows that joint operating agencies, such as WPPSS, or other municipal corporations are agencies of the state or that the state could be liable for claims against them.

The seminal case of *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), on which defendants rely heavily in their Tenth Amendment arguments, was limited by several subsequent U.S. Supreme Court decisions before being overruled in *Garcia. EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983); *FERC v. Mississippi,* 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982); *United Transportation Union v. Long Island Ry,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982); *Hodel v. Virginia Surface Mining and Reclamation Association,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

This series of cases culminating in *Garcia v. San Antonio Metro. Transit Authority, supra,* serves to substantially limit the Tenth Amendment constraints to federal regulation of matters within Congress' Commerce Clause powers. Even under the more restrictive criteria of *National League of Cities v. Usery, supra,* it is not clear that antifraud regulation of municipal bond issuances would be violative of the states' ability to operate in areas of "traditional governmental functions." Registration or other upfront regulation of municipalities involved in bond issuances, which would arguably interfere with the traditional governmental function of municipal financing, is not at issue in this litigation. Application of the antifraud provisions of the federal securities statutes to the activities of municipal corporations, which is at issue here, involves only the requirement that municipalities be held to the same disclosure standards as the other participants in municipal bond transactions. It is difficult to accept the argument that requiring that municipalities not be fraudulent in their activities somehow interferes with their abilities to "structure integral operations in areas of traditional govern-

mental functions." *National League of Cities v. Usery,* 426 U.S. at 852, 96 S.Ct. at 2474.[6]

If there was any doubt about the nonapplicability of the Tenth Amendment to the federal claims asserted here against the municipal defendants, it was laid to rest with *Garcia v. San Antonio Metro. Transit Authority, supra.* In rejecting the confusing classifications of governmental functions as integral or traditional and therefore entitled to Tenth Amendment immunity, the Court instead looked to the limits imposed by the structure of the federal government itself. Where the regulation is not destructive of state sovereignty and is within the powers given Congress under the Constitution, the Court in *Garcia* deferred to the outcome of the political process as expressed in the statute in question. Under this analysis the critical question before this Court is not whether the Tenth Amendment immunizes the municipal defendants from application of the antifraud provisions of the federal securities statutes but rather whether Congress intended that municipalities be subject to those provisions. The Tenth and Eleventh Amendments do not serve to protect the municipal defendants from the federal claims here asserted.

*Private right of action against municipalities*

To say that the Constitution does not preclude regulation of municipalities under the antifraud provisions of the federal securities laws is not to say that Congress has in fact chosen to do so. The issue of whether there is a private right of action against municipalities is hotly contested in the briefs submitted by municipal defendants and plaintiffs. The Court is aware that this is a controversial and important issue and one for which there is no direct authority in the caselaw.

---

**6.** Analogous reasoning was employed by the Court in *City of Philadelphia v. SEC,* 434 F.Supp. 281, 288 (1977) in rejecting a Tenth Amendment challenge to an SEC investigation of issuance of securities by the City. The Court held that since the investigation did not serve to prescribe conduct, any alleged effect upon the City's ability to finance was "a necessary attribute of a federal system," but not within Tenth Amendment protection.

It is worthwhile to first consider a few preliminary matters that provide a basis for analyzing the specific issue before the Court. It is a matter of established law and beyond dispute that there is an implied private right of action under Section 10(b) of the 1934 Act and SEC Rule 10b–5. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Rule 10b–5 provides that,

It shall be unlawful for any person, directly or indirectly, ...

(a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of circumstances under which they are made, not misleading, or

(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5 (1985).

Confusion has arisen in the application of these provisions to transactions in municipal securities because of the special treatment accorded that class of securities. The 1933 Securities Act, in § 3(a)(2), specifically exempts municipal securities from its provisions unless there is an express provision including them. Section 17(a) of the 1933 Act expressly includes municipal securities in its proscription of fraudulent conduct.[7] The 1934 Act also classifies municipal securities as exempt, but it does not employ the blanket exemption found in the 1933 Act. Municipal securities are specifically exempted in the 1934 Act from its registration and reporting requirements.[8] Municipal securities are not specifically exempted from § 10(b) of the 1934 Act. Therefore transactions in municipal securities are covered by the anti-fraud provisions of both the 1933 and 1934 Acts.

▮▮ There is strong support for the existence of a private right of action under § 10(b) of the 1934 Act against the non-governmental participants in municipal securities transactions. *See, In re New York City Municipal Securities Litigation*, 507 F.Supp. 169, 177–8 (1980) and cases cited therein. This issue is not disputed by defendants in their briefs. It is the conclusion of this Court that § 10(b) of the 1934 Act does apply to transactions in municipal securities and that it does provide a private right of action to investors against the non-governmental participants.

▮▮ This brings us to the issue that began this section—whether there is a private right of action against *municipal* participants under § 10(b) of the 1934 Act. Until 1975, governmental entities had been excluded from the definition of "person" under the 1934 Act. In 1975, Section 3(a)(9) was amended to read, "The term 'person' means a natural person, company, government, or political subdivision, agency or instrumentality of a government." 15 U.S.C. 78c(a)(9). Since the language of Rule 10b–5 quoted above provides that "it shall be unlawful for any *person* ... to use or employ", this amendment of the definition of person under the 1934 Act is argued by Plaintiffs to have extended the reach of § 10(b) to include municipalities.

The municipal defendants argue at length that there has never been a private right of action against municipalities and that the 1975 Amendments do not change that result. In support of this position, defendants present detailed legislative analyses of comments made in the course of Congressional consideration of the 1975 amendments and as well as other, subsequent related legislation not enacted into law. Plaintiffs counter that the language of the Act and the 1975 amendment is clear

---

**7.** Since this Court has already ruled that there is not a private right of action under § 17(a) of the 1933 Act, the issue of whether such a right, if it did exist, would extend to municipalities will not be addressed.

**8.** *See* 15 U.S.C. §§ 78*l*, 78m (1981).

on its face and that it is both unnecessary and improper to delve into Congressional intent. Nevertheless, plaintiffs do provide their own legislative analysis supportive of an intent to provide a private right of action against municipalities.

The language of the 1975 Amendment defining person to include governments, and incorporated into Rule 10b–5 by Rule 0–1(b), appears to expand the class of persons liable for fraudulent paractices to include municipalities. The 1975 Amendment was enacted by Congress in the context of a firmly established court-implied private right of action under § 10(b) of which Congress must be presumed to have been aware. Therefore when the definition of "person" was expanded to include governments, Congress must have intended that governments were to be treated the same as other "persons" under the Act except where specifically exempted. The language of the statute itself is the best guide to Congressional intent, and absent compelling reason not to do so, should be given due deference by the Court. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *U.S. v. Jones,* 607 F.2d 269, 273 (9th Cir.1980).

The detailed legislative analysis presented by defendants, although interesting and indicative of the complexity of the securities laws and differences in individuals' understanding of them, does not compel the Court to disregard the clear language of the statute as amended. This is particularly true in light of the conclusion of a number of commentators based on their own legislative and statutory analysis that there is a private right of action against municipalities under § 10(b) and Rule 10b–5. *See* Steinberg, "Municipal Issuer Liability under the Federal Securities Laws," 6 *Journal of Corporation Law* 277, 279 (1981); Note, "The Liability of Issuers of Municipal Securities," 31 *Baylor Law Review* 551, 555 (1979); Peacock, "A Review of Municipal Securities and their Status

Under the Federal Securities Laws as Amended by the Securities Acts Amendments of 1975," 31 *The Business Lawyer* 2036, 2043 (1976); Doty and Peterson, "The Federal Securities Laws and Transactions in Municipal Securities," 71 *Northwestern University Law Review* 283, 293 (1976); Note, "Disclosure by Issuers of Municipal Securities: An Analysis of Recent Proposals and a Suggested Approach," 29 *Vanderbilt Law Review* 1017, 1019 (1976); *but see* Schwarz, "Municipal Bonds and the Securities Laws: Do Investors Have an Implied Private Remedy?" 7 *Securities Regulation Law Journal* 119 (1979).

Neither do the cases cited by defendants as holding that there is no private right of action against municipalities compel a different conclusion. The Court in *In re Equity Funding Corporation of America Securities Litigation,* 416 F.Supp. 161, 198, granted the defendant states' and governmental officials' motion to dismiss the § 10(b) claims on the ground that they did not fall within the definition of "persons" liable under the pre-1975 Act. Presumably that same court would reach a different conclusion on that issue under the expanded definition of persons in the 1975 amendment. The same is true of the decision in *Greenspan v. Crosbie,* CCH Sec.Law Rptr. (1976–77 binder) P. 95,780 (SD NY 1976), an action commenced before 1975. The holding of the Court in *In re New York City Municipal Securities Litigation,* 507 F.Supp. 169, 185 was also based on interpretation of the statute prior to the 1975 amendment.

Defendants' reliance on *Employees of the Dep't of Public Health & Welfare v. Dep't of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) is misplaced. In that case, state employees brought suit against a state agency in federal court under the Fair Labor Standards Act. Their suit against the state was based on an amendment of the definition in the FLSA of "employer" to include the state in certain capacities. In

holding that the suit must be dismissed, the Court relied solely on the immunity granted states under the Eleventh Amendment and the fact that Congress would not "silently ... deprive the States of an immunity they have long enjoyed under another part of the Constitution." 411 U.S. at 285, 93 S.Ct. at 1618. The Court distinguished *Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), on the basis that it had involved the state in a proprietary-type function whereas in *Employees* the state was providing non-profit health care services. 411 U.S. at 283–84, 93 S.Ct. at 1617–18. The implication of the majority opinion in *Employees,* made explicit in the concurring opinion, is that a right of action against certain state employers was created by Congress' amendment of the definition but that it could not be pursued in federal court because of State immunity under the Eleventh Amendment. 411 U.S. at 298, 93 S.Ct. at 1625.

As discussed earlier in this opinion, the Eleventh Amendment is not a bar to the present action against the municipal defendants. It is the holding of this Court that by expanding the definition of "person" in the 1934 Act to include governments, a right of action against these municipal defendants was created.

*Governmental Immunity*

■ The municipal defendants move to dismiss all claims against them, including the federal securities claims, on the basis of governmental immunity. They argue that the actions of the public entities and officials at issue here are either legislative, official or discretionary acts and as such are immune from liability. Plaintiffs respond by arguing that the claims brought in this litigation arise out of actions performed by the public defendants in their proprietary capacities and thus are not protected governmental functions. Plaintiffs further argue that federal law serves to pre-empt the assertion of governmental immunity as to the federal securities claims.

Federal pre-emption is the logical place to begin our analysis since only federal securities claims are under consideration here. State law doctrines of governmental immunity need not concern us on these motions to dismiss if the federal securities laws are found to have pre-empted state laws that would serve to frustrate federal regulation of these matters.

The most widely cited case for the principle of federal pre-emption is *Parden v. Terminal Railway of Alabama State Docks Dep't.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), a case involving regulation of a state-owned railroad under FELA. In that case the Court rejected the state's claim of sovereign immunity holding that, "By empowering Congress to regulated commerce, then, the States necessarily surrendered any portion of their sovereignty that would stand in the way of such regulation." 377 U.S. at 192, 84 S.Ct. at 1212.

A different result was reached in a later Supreme Court case involving a suit by employees of a state agency under FLSA, *Employees of the Dep't. of Public Health & Welfare v. Dep't. of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In that case the Court held that although the employees were covered by the Act, the 11th Amendment prevented them from suing the state in federal court. The Court distinguished *Parden* on the basis that it involved a proprietary activity while at issue in this case were governmental functions. The majority did leave open the question of whether the employees could sue under the Act in state court. The fact that the state's immunity under the 11th Amendment was in Constitutional parity with the federal power under the Commerce Clause was emphasized by the majority. In his concurring opinion, Justice Marshall agreed that the 11th Amendment prevented the action in federal court but went on to explicitly state that such an action would be possible in state court and would not be precluded by state immunity law.

Most of the cases in which the issue of federal pre-emption and governmental im-

munity have arisen have been § 1983 actions. An instructive one is *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The issue in the case was whether local governments were entitled to qualified immunity under § 1983. In rejecting the lower courts' holdings that there was qualified immunity for local governments the majority stated,

> the municipality's 'governmental' immunity is obviously abrogated by the sovereign's enactment of a statute making it amenable to suit. Section 1983 was just such a statute. By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law[fn]—abolished whatever vestige of the State's sovereign immunity the municipality possessed. 445 U.S. at 647–48, 100 S.Ct. at 1413–14.

As a footnote to this passage the opinion also states, "Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law...." 445 U.S. at 647, n. 30, 100 S.Ct. at 1413 n. 30.

The cases cited by defendants as authority that there is not pre-emption under the federal securities laws all involve actions against states for improper regulatory actions and pre-emption is rejected on the basis of the 11th Amendment. *See, Yeomans v. Commonwealth of Kentucky*, 514 F.2d 993 (6th Cir.1975); *Green v. State of Utah*, 539 F.2d 1266 (10th Cir.1976); *Brown v. Commonwealth of Kentucky*, 513 F.2d 333 (6th Cir.1975).

The only case the Court has found directly addressing the issue of governmental immunity under the federal securities laws where the government is the issuer is *Forman v. Community Services, Inc.*, 500 F.2d 1246 (2d Cir.1974), rev'd on other grounds, *United Housing Foundation, Inc, v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). The case, involving whether shares in a cooperative housing project were securities subject to regulation, included federal securities claims brought against the state housing authority and the State of New York. The Second Circuit, after holding that the shares were securities, held that, "the State has waived its sovereign immunity with respect to federal securities laws violations by voluntarily entering a field under federal regulation." 500 F.2d at 1256. The Supreme Court reversed on the ground that the shares were not securities subject to regulation and it did not reach this pre-emption holding.

The Idaho and Oregon municipal defendants raise certain issues relating to notice of claim statutes. Since the federal securities laws do not have statutes of limitation, federal policy is to adopt the local statute of limitations. These defendants argue that this should include any borrowing statute that the forum state would apply including their states' notice of claim statutes. The Court is unconvinced by this argument since enforcement of short notice of claim statutes such as is found in Idaho Code § 6–906 (120 days) would effectively preclude most multistate securities actions. In *Willis v. Reddin*, 418 F.2d 702 (1969), the Ninth Circuit refused to apply a California notice of claim statute in a § 1983 action on the ground that, "... California may not impair federally created rights or impose conditions on them." 418 F.2d at 704–5. The federal rules do not impose special notice requirements for a public entity so a state should not be allowed to do so as to the federal claims asserted here.

It is the ruling of this Court that state governmental immunity law is pre-empted by the federal securities statutes. Our analysis cannot end there, however, because there may remain certain types of immunity rooted in the Constitution and federal common law that are not pre-empted by the federal securities laws.

The U.S. Supreme Court has held that federal pre-emption does not serve to abrogate the immunity enjoyed by federal,

state, or regional legislators. *See, Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Lake Country Estates Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (1983), the Ninth Circuit extended the protection of legislative immunity to county commissioners in enacting a general zoning ordinance.

In order for legislative immunity to apply, the governmental officials must be acting in their legislative capacities. Legislative immunity does not extend to all decisions made by all governmental officials. In the case of state legislators it is clear that their official actions are legislative. But in the case of local officials who have mixed legislative and administrative duties, such determinations are much more difficult. As stated by the Ninth Circuit in *Thomas v. Younglove,* 545 F.2d 1171 (1976), a case involving civil rights actions brought by a nurses' association against a county and certain county officials,

> Absolute legislative immunity is not always appropriate for county supervisors. The questioned activity may or may not share in the 'speech and debate' immunity conferred upon legislators.... The absolute legislative immunity recognized in *Tenney v. Brandhove,* [cite], applied in that case to state legislators and not necessarily to those other state or local officials whose duties can be characterized as partially 'legislative.' 545 F.2d at 1173.

The court went on to reverse the lower court's dismissal on Rule 12(b)(6) grounds, holding that the record needed to be more fully developed before the claims of immunity could be evaluated.

■ The applicability of legislative immunity to the actions of the municipal defendants in the present litigation similarly cannot be determined at the pleading stage.

A determination of whether or not certain of the actions at issue here were legislative must abide a more complete factual record.

The same conclusion applies to certain defendants' assertions of official immunity. Official immunity is a limitation on the personal liability of governmental officials. It applies to a broader range of actions than does legislative immunity, but it is qualified and requires a showing of good faith. The Supreme Court has held that official immunity applies to claims brought under federal law. *See, Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), a case involving state officials sued under § 1983, the Court held that the applicability of official immunity was "dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." 416 U.S. at 247, 94 S.Ct. at 1692. The Court further held that the scope of the immunity was necessarily related to facts not yet established at the pleading stage, and that dismissal was inappropriate.

It should be noted that both legislative and official immunity are available only to individuals and not to the governmental entities themselves. In *Lake Country Estates Inc. v. Tahoe Regional Planning Agency, supra,* the Court limits application of legislative immunity to individuals when it states,

> There is no allegation in this complaint that any members of TRPA's governing board profited personally from the performance of any legislative act. If the respondents have enacted unconstitutional legislation, there is no reason why relief against TRPA itself should not adequately vindicate petitioners' interests. 440 U.S. at 405, 99 S.Ct. at 1179.

In *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), a § 1983 action, the issue before the Court was whether the qualified immunity enjoyed by officials should be extended to the governing body as well. In holding that it should not, the majority reasons that the rationales for official immunity do not apply as forcefully to municipalities and that "it is the public at large which enjoys the benefits of the government's activities, and it is the public at large which is ultimately responsible for its administration." 445 U.S. at 655, 100 S.Ct. at 1417.

*Chemical Bank Standing to Sue*

 The defendants move to dismiss some or all of the claims in the *Chemical Bank* action on the ground that Chemical Bank has no standing to sue on behalf of the bondholders. Defendants base this contention on several grounds. First, defendants argue that under the Bond Resolution, from which Chemical Bank must derive its authority to act on behalf of bondholders, the trustee is limited to contractual claims. My reading of Section 11.4 of the Bond Resolution is much broader than that, since it provides, *inter alia,* that the Bond Fund Trustee,

> as attorney in fact for the holders of all the Bonds ... shall be entitled and empowered to proceed forthwith to institute such suits, actions and proceedings at law or in equity for the collection of all sums due in connection with the Bonds and to protect and enforce its rights and the rights of the holders of the Bonds under the Resolution ... in the enforcement of any other legal or equitable right as the Bond Fund Trustee, being advised by counsel, shall deem most effectual to enforce any of its rights or the rights of the holders of the Bonds....

It is my conclusion that Chemical Bank is empowered under the Bond Resolution to bring the claims now before this Court.

Defendants also contend that Chemical Bank as trustee does not have standing to bring the federal securities claims because it is not a purchaser or seller of the bonds as required by *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The *Blue Chip Stamps* case, however, dealt with the issue of whether or not an offeree of a stock who had neither purchased or sold the stock could maintain a Rule 10b–5 action. The case did not address the question before this Court of whether a plaintiff has standing to bring a 10b–5 action *in its representative capacity* for actual purchasers. Several courts have suggested that under the proper circumstances the legitimate representatives of actual buyers or sellers would have standing to bring 10b–5 claims. *See, O'Brien v. Continental Illinois National Bank & Trust Co.,* 593 F.2d 54, 62 (7th Cir.1979) ("Our holding does not affect any claim the principal or beneficiary may assert, alone *or jointly with the agent or trustee,* against the seller of the securities." Emphasis added.); *Kusner v. First Pennsylvania Corp.,* 531 F.2d 1234, 1237 (3d Cir.1976) ("A private action for damages based on Rule 10b–5 requires that the plaintiff *or those he represents* either have bought or sold shares in connection with the fraud." Emphasis added.); *Thomas v. Roblin Industries,* 520 F.2d 1393, 1396 (3d Cir.1975) ("The record does not suggest and plaintiff trustee does not contend that her *or the parties he represents* are complaining about a transaction in which any of them was either a buyer or a seller...." Emphasis added.). In *Rochelle v. Marine Midland Grace Trust Co. of N.Y.,* 535 F.2d 523, 527–28 (9th Cir.1976), the Ninth Circuit held that a reorganization trustee under Bankruptcy law had standing to assert § 10b and Rule 10b–5 claims on behalf of the debtor for debentures the debtor had purchased and sold. By analogy, Chemical Bank should be able to assert federal securities claims

as bond trustee for the bondholders who bought 4/5 bonds.[9]

Defendants further argue that Chemical Bank does not have standing to bring tort claims. Federal Rules of Civil Procedure § 17(a) provides that an action may be prosecuted by the trustee of an express trust as a real party in interest. Once it has been determined that under the Bond Resolution Chemical Bank is empowered to assert the claims now before this Court, and that it is a real party in interest under the Federal Rules, it follows that it has standing to bring tort claims on behalf of the bondholders. *See, Restatement (2d) of Trusts* § 280. . *See also Spratt v. Security Bank of Buffalo, Wyoming,* 654 P.2d 130 (Wyo. 1982).

Motions to dismiss Chemical Bank for lack of standing are DENIED.

*Other Substantive Motions*

A number of other motions re-urged by the parties may be ruled on in summary fashion. It should be noted that since the Court has ruled that the operative complaints in both MDL 551 and the Chemical Bank action are the Second Amended Complaints, the Court need not rule on various motions to dismiss brought by parties subsequently omitted from the Second Amended Complaints. Only parties named in the Second Amended Complaints, and not subsequently dismissed out, are before the Court.

The motion of Earl S. Morganroth to intervene in the Chemical Bank action is DENIED. The Order of September 2, 1983 is adopted as this Court's Order.

The Order of December 30, 1983 approving the form and publication of Notice of Claim against Bonneville Power Administration is adopted as this Court's Order.

The class plaintiffs' motion of August 23, 1984, for leave to amend to add certain defendants is GRANTED.

Chemical Bank's motion of January 12, 1984, for leave to amend to add Pacific Northwest Generating Company as a defendant is GRANTED.

The Order of March 21, 1984, approving the form and publication of class notice is adopted as this Court's Order.

The class plaintiffs' motion of August 23, 1984, for leave to supplement their Second Amended and Consolidated Complaint to add the United States as an additional defendant and to add a ninth claim is GRANTED.

The Order of December 17, 1984 and Minute Order of January 10, 1985, granting plaintiffs' first and second motions to intervene as additional parties plaintiff are adopted as this Court's Orders.

The requests of Aubrey C. Moss, Arthur Hoffer and Eleanor Hoffer to re-enter the class are GRANTED.

Objections to class certification of the federal claims on the basis that a class action is not a superior method for adjudication are DENIED. The Stipulation and Order of November 30, 1983 remains in effect.

The Columbia Defendants' motion of September 15, 1983 to strike the Chemical Bank Complaint under Rule 11 is DENIED.

Any rulings previously entered regarding consolidation of cases with MDL 551 are hereby affirmed.

---

**9.** The holding in *In re Equity Funding Corporation of America Securities Litigation,* 603 F.2d 1353 (9th Cir.1979) does not compel a different conclusion. Although Chemical Bank, as indenture trustee, was denied standing in that case to appeal the reorganization plan, Chemical Bank was in a very different posture with respect to that securities litigation than it is in the present securities litigation. In the earlier litigation Chemical Bank had not sought to represent the debentureholders in the securities litigation, it did not have express authorization to represent debentureholders, and it was a defendant in the initial complaint, "putting a sufficient taint on Chemical Bank's standing to represent debentureholders in the securities litigation in any capacity...." 603 F.2d at 1361–62, n. 10. Here, none of those factors are present.