CONTINENTAL BANK, NATIONAL AS-
SOCIATION, As Bond Fund Trustee
Under the General Bond Resolution
adopted August 26, 1976 of the Massa-
chusetts Municipal Wholesale Electric
Company, Plaintiff,

v.

VILLAGE OF LUDLOW, Village of
Hardwick, Village of Morrisville, Vil-
lage of Lyndonville, Village of Stowe,
Village of Swanton, Village of North-
field, Vermont Electric Cooperative,
Inc., and Washington Electric Coopera-
tive, Inc., Defendants.

CONTINENTAL BANK, NATIONAL AS-
SOCIATION, As Bond Fund Trustee
Under the General Bond Resolution
Adopted August 26, 1976, of the Massa-
chusetts Municipal Wholesale Electric
Company, Plaintiff,

v.

James E. BAKER, Charles Coughlin,
Horst Huehmer, Thomas R. Josie, Wil-
liam Kennedy, Michael Madore, Mark
Magyar, Wayne Marquis, Neil E. Mur-
ray, Bruce Patten, William Rugg, Ha-
rold Smith, Joseph Spadea, John Does
I–III, Town of Danvers, Danvers Mu-
nicipal Electric Division, Georgetown
Municipal Light Department, Hingham
Municipal Lighting Plant, Town of Hol-
den, Holden Municipal Light Depart-
ment, Hudson Municipal Light Depart-
ment, Paxton Municipal Light Depart-
ment, Peabody Municipal Light Plant,
Shrewsbury's Electric Light Plant,
Sterling Municipal Light Department,
West Boylston Municipal Light Plant,
and the Massachusetts Municipal
Wholesale Electric Company, Defen-
dants.

Civ. A. Nos. 90–12535–Y, 90–12941–Y.

United States District Court,
D. Massachusetts.

Oct. 31, 1991.

93

Arnold P. Messing, Kevin J. Lesinski, Gaston & Snow, Boston, Mass., Howard J. Roin, Mayer, Brown & Platt, Chicago, Ill., for plaintiff Continental Bank Nat. Ass'n.

M. Frederick Pritzker, M. Robert Dushman, Thomas W. Evans, Brown, Rudnick, Freed & Gesmer, Boston, Mass., Edward V. Schwiebert, Carolyn Browne Anderson, Abell, Kenlan, Schwiebert & Hall, Rutland, Vt., for defendants Village of Ludlow, Village of Morrisville, Village of Lydonville and Village of Northfield.

Donald S. Bronstein, Jeffrey M. Bernstein, Bernstein & Bronstein, Boston, Mass., Edward B. French, Law Office of D.P. Stackpole, Stowe, Vt., for defendant Village of Stowe.

Donald S. Bronstein, Jeffrey M. Bernstein, Bernstein & Bronstein, Boston, Mass., Michael L. Burak, Jon T. Anderson, Brian J. Sullivan, Burak & Anderson, Burlington, Vt., for defendant Vermont Elec. Co-op., Inc.

Donald S. Bronstein, Jeffrey M. Bernstein, Bernstein & Bronstein, Boston, Mass., M. Jerome Diamond, Diamond & Associates, Montpelier, Vt., for defendant Washington Elec.

Earle C. Cooley, Cooley, Manion, Moore & Jones, Boston, Mass., for defendants Joseph Spadea, Harold Smith, William Rugg, Bruce Patten, Neil E. Murray, Wayne Marquis, Mark Magyar, Michael Madore, William Kennedy, Thomas R. Josie and Horst Huehmer.

Paul Kenny, Danvers, Mass., for defendants Danvers Mun. Elec. Div. and Town of Danvers.

John O. Mirick, Mirick, O'Connell, DeMallie & Lougee, Worcester, Mass., for defendants Georgetown Mun. Light Dept., Holden Mun. Light Dept., Hingham Mun. Lighting Plant, Shrewsbury's Elec. Light Plant, Sterling Mun. Light Dept. and West Boylston Mun. Light Plant.

Earle C. Cooley, Harry L. Manion, III, Roy Patrick Giarrusso, Cooley, Manion, Moore & Jones, Boston, Mass., for defendants Hudson Mun. Light Dept. and Peabody Mun. Light Dept.

Nicholas J. Scobbo, Gerald J. Caruso, Ferriter, Scobbo, Sikora, Caruso, Rodophele, Boston, Mass., for defendant The Massachusetts Mun. Wholesale Elec. Co.

Martin O'Connell, Morisi & O'Connell, Springfield, Mass., for third-party defendants Daniel Golubek and Westfield Elec. Light Dept.

Brian T. Cuffe, Shafner, Keating & Cuffe, Lynn, Mass., for third-party defendant Frederick Nembergut.

Harold J. Keohane, Craig A. MacDonnell, Keohane, Detore & Keegan, Boston, Mass., for third-party defendant Caroline Stouffer.

George A. Berman, Posternak, Blankstein & Lund, Boston, Mass., for third-party defendants Ferriter, Scobbo, Sikora, Caruso & Rodophele, P.C. and Begley, Ferriter, Lavelle & Welch, P.C.

Mark Alan Beauregard, Resnic, Beauregard, Waite & Driscoll, Holyoke, Mass., for third-party defendant South Hadley Elec. Light Dept.

Jeffrey M. Bernstein, Stacey L. Cushner, Bernstein & Bronstein, Boston, Mass., for third-party defendant Village of Stowe, Village of Stowe Water and Light Dept.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. Factual Background.

A. *Continental Bank v. Village of Ludlow,* Civil Action No. 90–12535–Y

Continental Bank National Association ("Continental"), the plaintiff in this first diversity action, seeks a declaratory judgment, as bond fund trustee of the Massachusetts Municipal Wholesale Electric Company ("the Agency"), that several Vermont

Villages, ("Villages"), breached Power Sales Agreements ("Agreements") executed with the Agency.[1]

A history and factual background are necessary for a full appreciation of the issues. The Agency, organized under Chapter 775 of the Massachusetts Acts of 1975[2] as a political subdivision of the Commonwealth, is a joint planning agency, designed to provide bulk power supply for its members, usually municipal electric systems and utilities. The Agency "fine tunes" interest in a power facility by offering members a share in the facility or "project capability." Each of these Vermont Villages bought shares of "project capability" in the Seabrook, New Hampshire nuclear generating plant ["Seabrook"] and executed Agreements with the Agency to that end. In the Agreements, the Villages agreed to make revenue payments come "hell-or-high-water," *viz.* regardless of whether or not the project was completed.[3] The Agreements also provided that Massachusetts law would apply in any legal dispute. Agreement ¶ 19 at 23.

The Agreements authorized the Agency to, *inter alia,* finance, plan, and engineer the construction of Seabrook and to issue and sell revenue bonds to achieve that objective. Agreement ¶ 3(a) at 9. Consequently, the Agency executed a General Bond Resolution ("Bond Resolution"), with Continental authorizing the issuance of revenue bonds to finance construction of Seabrook. Bondholders were to be re-paid through revenues from the member utilities. A bond fund was established into which member's payments were deposited to cover the monthly principal and interest obligations of the Agency. As bond fund

trustee, Continental was empowered to file suit or proceedings in its own name or on behalf of the bondholders, regardless of whether or not a default occurred. Bond Resolution § 8.4 at 76–78. The Bond Resolution also designated Massachusetts law as applicable to disputes. Bond Resolution § 13.8 at 110.

In 1979, twenty Massachusetts municipal light departments and ten non-Massachusetts utilities ("Participants"), including the eight Vermont Villages, signed separate but identical Seabrook Power Sales Agreements contracting with the Agency for the first right to purchase a share of any electricity generated by the project in exchange for an unconditional obligation to pay a *pro rata* share of the Agency's costs related to the acquisition, construction, and financing of the Agency's approximately 6% ownership of Seabrook. Between 1981 and 1987, the Agency subsequently issued approximately $517 million in bonds pursuant to its Bond Resolution.

By then, with the Seabrook nuclear power facility mired in political controversy, seemingly endless regulatory proceedings, and enormous cost overruns, the Vermont Department of Public Service ("the Department"), aware that Villages had independently contracted for power with the Agency, brought an action in the Vermont Superior Court sitting in and for Washington County, Vermont, seeking declaratory relief that the Agreements were invalid and therefore not binding on the Villages. The lower court was not persuaded, granting summary judgment to the defendant Agency and six Villages.[4] The Vermont Supreme Court, however, agreed with the Department on appeal and declared the

---

1. The five-count complaint alleges: (1) the right to a declaratory judgment that the Agreements are valid; (2) breach of contract; (3) promissory and equitable estoppel; (4) waiver and laches; and (5) unjust enrichment.

2. Chapter 775 of the Massachusetts Acts of 1975 is entitled, "An Act Making The Massachusetts Municipal Wholesale Electric Company A Public Corporation And Defining Its Powers and Duties," *reprinted in* Mass.Gen.L. ch. 164 app. at

§ 1 *et seq.* (West 1976). *See also* Official Statement of Massachusetts Municipal Wholesale Electric Company, at 1.

3. These "hell-or-high-water" or "take-or-pay" provisions are customary in the utility field. *See* Agreement ¶ 5(d) at 12.

4. The Village of Stowe and Vermont Electric Cooperative joined with the plaintiff, leaving the remaining six Villages, Washington Electric Cooperative and the Agency as defendants.

Agreements void *ab initio.*[5] *Vermont Dept. of Public Service v. Massachusetts Municipal Wholesale Elec. Co.,* 151 Vt. 73, 558 A.2d 215 (1988), *cert. denied,* 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989).

In the Vermont decision, Chief Justice Allen noted that Vermont law empowered the Villages to collectively purchase "capacity and energy." *Id.* 151 Vt. at 78, 558 A.2d 215. The Agreements at issue there—and here, however, do not involve a purchase of electricity but of "project capability," and require payments even if the project fails and no electricity is generated. *Id.* The Villages could only buy electricity, not potential electricity. *Id.* at 78–81, 558 A.2d 215. Moreover, the take-or-pay provisions obligated the Villages, in the court's opinion, to give financial priority to payments to the Agency, restricting their ability to make spending decisions. *Id.* at 86, 558 A.2d 215. The Agreements thus constituted an impermissible intrusion upon the province of the municipal legislatures to determine the expenditure of revenues for long-term power supply.[6] The Villages, though empowered to purchase electricity, could not restrict or delegate their spending power. *Id.* at 85–86, 558 A.2d 215. The same held true for the quasi-public Vermont cooperatives. *Id.* at 88–89, 558 A.2d 215. The court held the Agreements void *ab initio.*

The Villages here move to dismiss based on three grounds: (1) that since Continental was not a party to the Agreements it lacks standing to sue; (2) that Continental, as bond fund trustee, stands in the shoes of the Agency and, based on the prior disposition in the Supreme Court of Vermont, is collaterally estopped from maintaining this action; and (3) that principles of *res judicata* prevent a second disposition of these issues. In the alternative, the Villages

seek to transfer the matter to the District of Vermont, where a related action is pending.[7]

### B. *Continental Bank v. Baker*—Civil Action No. 90–12941–Y

Continental brings this second action under the federal securities laws and the Court's diversity jurisdiction as Bond Fund Trustee ("Trustee") under the Bond Resolution, on behalf of the bondholders who it alleges were misled as to the value of the Bonds by the Massachusetts Participants and the officials who signed the Agreements ("Individuals") since they attempted to escape their obligations after the issuance of the Bonds.

In this action as well, the background facts are largely undisputed. In March, 1989, after the Vermont Supreme Court declared the Seabrook Agreements void *ab initio* as to the eight Vermont Villages for lack of proper authority, *Vermont Dept. of Public Service v. Massachusetts Municipal Wholesale Elec. Co.,* 151 Vt. 73, 558 A.2d 215 (1988), *cert. denied,* 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989), the Agency invoked the step-up provisions of the remaining Agreements which allow it, in case of default by a Participant, to bill the remaining utilities for a *pro rata* share of the resulting shortfall in revenues. Shortly thereafter, a number of the Massachusetts Participants filed suits in the Massachusetts Supreme Judicial Court for Suffolk County ("the Single Justice Session") against the Agency, claiming that their Seabrook Agreements were no longer valid in light of the Vermont Supreme Court decision, and that the Vermont Participants' non-payment was not a default which would cause the step-up provisions to apply.[8] The Agency and Continental

---

**5.** Latin for "From the beginning; from the first act; from the inception." Black's Law Dictionary, West Publishing (1979).

**6.** The Agreements also impermissibly delegated the legislature's spending power since the Villages had no input into decisions to incur debt but were obligated to pay "come-hell-or-high-water." *Id.* at 85, 558 A.2d 215.

**7.** *Washington Elec. Cooperative, Inc. v. Mass. Municipal Wholesale Elec. Co.,* No. 89–94 (D.Vt.)

(Action for the return of monies paid to the Agency under the Agreements voided by the Supreme Court of Vermont).

**8.** *Hudson Light and Power Department and Peabody Municipal Light Plant v. Massachusetts Municipal Wholesale Elec. Co.,* SJC C.A. No. 89–225; *Shrewsbury Electric Light Plant v. Massachusetts Municipal Wholesale Elec. Co.,* SJC C.A. No.

likewise filed suit in the Single Justice Session seeking declaratory relief to enforce the Agreements.[9] On August 22, 1991, the full bench of the Massachusetts Supreme Judicial Court declared in the action which had consolidated those suits just mentioned that the Agreements were valid and that the step-up provisions properly invoked. *Massachusetts Municipal Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 61–62, 577 N.E.2d 283 (1991). Meanwhile, Continental, professing to be outraged that the Massachusetts Participants and Individuals would balk at performing their duties under the step-up provisions, brought this second action as Trustee on behalf of the bondholders. Continental now alleges misrepresentation by the defendant Participants and Individuals in violation of the federal securities laws (Count I); deceit, fraud, and misrepresentation (Count II); and negligence (Count III).

The Defendants move to dismiss all the claims in this second action.

## II. Motions to Dismiss (both cases).

■ This Court must take the material allegations of each complaint as true and view the facts in a light most favorable to Continental. *Kilmartin v. Wainwright & Co.*, 580 F.Supp. 604, 605 (D.Mass.1984). If it is beyond doubt that Continental can prove no set of facts in support of its claims for relief, this Court is empowered to dismiss the flawed action. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Where the defense of *res judicata* is raised, the Court may dismiss if it is satisfied that, in a prior action between the parties or those in privity with them, the issues which were there raised or which could have been raised have been resolved by a prior judgment. *See McDonald v. City of West Branch*, 466 U.S. 284, 287 n. 5, 104 S.Ct. 1799, 1801 n. 5, 80 L.Ed.2d 302 (1984); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66

L.Ed.2d 308 (1980) (denying federal access to a claimant under 42 U.S.C. § 1983 who could have advanced that claim in state courts, and noting that "a final judgment on the merits of an action precludes the parties or their privies from again litigating issues that were or could have been raided in that action"). *See also Bergeron v. Estate of Loeb*, 777 F.2d 792, 795 (1st Cir.1985) (sustaining dismissal of plaintiff's previously litigated claims against the estate because "res judicata would preclude review here even if we believed the [state court's] decision was unconstitutional on its face").

## III. Standing (both cases).

All the defendants strike at the power source, challenging Continental's standing to sue.

### A. *Contractual Considerations*

■ The defendants first contend that Continental has no standing to sue on behalf of the bondholders under the Bond Resolution itself. Their attempts to distinguish *In re Washington Public Power Supply System ("WPPSS") Securities Litigation*, 623 F.Supp. 1466 (W.D.Wash. 1985), are, however, unpersuasive. The Bond Resolution provides, *inter alia*, that

> The Bond Fund Trustee may without the happening of an Event of Default ... take such steps and institute such suits, actions or proceedings in its own name, or as trustee or in the name of [the Agency], or in the name of the Bondholders, all as the Bond Fund Trustee may deem appropriate, for the protection and enforcement of the rights of the holders of bonds and the coupons appurtenant thereto, to collect any amount due and owing from [the Agency] or by injunction, mandamus or other appropriate proceeding in law or in equity to obtain other appropriate relief.

2192B; *Hingham Municipal Lighting Plant v. Massachusetts Municipal Wholesale Elec. Co.*, SJC C.A. No. 89–2193C; *Sterling Light Department v. Massachusetts Municipal Wholesale Elec. Co.*, SJC C.A. No. 89–2253C; *Holden Municipal Light Department v. Massachusetts Mu-*

*nicipal Wholesale Elec. Co.*, SJC C.A. No. 89–2361A.

**9.** *Massachusetts Municipal Wholesale Elec. Co. and Continental Bank v. Danvers, et al.*, C.A. No. 90–0511 (filed April 24, 1989).

Bond Resolution § 8.4 at 78.

A comparison of these provisions with the language of the WPPSS Bond Resolution which was found in the *WPPSS* case to give broad power to Chemical Bank as Trustee to bring federal securities and state tort claims reveals that there is no material difference between them.[10] This Court thus comes to the similar conclusion that Continental is broadly empowered as Trustee under the Bond Resolution to bring the claims now before the Court and consequently has proper standing as the legitimate contractual representative of the affected Bondholders.

### B. *Constitutional Considerations*

While Continental thus properly stands in the shoes of the bondholders and can sue on their behalf, it is argued that neither Continental nor the bondholders were parties to the executed Agreements and therefore cannot pursue judicial remedies. Continental naturally does not claim any personal right under the Agreements themselves, but rather claims to be an intended beneficiary and, as Trustee, exercises its right to sue as expressed in the Bond Resolution executed between itself and the Agency.

Standing, together with the related concept of mootness, is the first hurdle of justiciability and among the most important. *See* L. Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement,* 93 Harv.L.Rev. 297 (1979). Article III empowers this Court to decide only "cases and controversies," and a party invoking the judicial power must show actual or threatened personal injury-in-fact resulting from the conduct of the defendant that can be redressed through a disposition of the issues. *Valley Forge Christian College v. Americans United for Separation of*

*Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). Advisory opinions are not the province of the Court, and constitutional standing requirements assure that concrete issues are before the court, rather than lofty and amorphous claims. *Id.* at 472, 102 S.Ct. at 758. Only those parties likely to be affected by the outcome of the case are entitled to sue. *Id.* at 473, 102 S.Ct. at 759; *see also Ozonoff v. Berzak,* 744 F.2d 224, 227 (1st Cir.1984); *National Association for the Advancement of Colored People, Boston Chapter v. Harris,* 607 F.2d 514, 518 (1st Cir.1979); *Conservation Law Foundation of New England, Inc. v. Reilly,* 743 F.Supp. 933, 936–38 (D.Mass.1990), *appeal pending.*

### IV. Analysis—*Continental Bank v. Village of Ludlow,* Civil Action Nol 90–12535–Y.

#### A. *Standing*

■ This Court recognizes that Continental has an interest in whether the Villages have an obligation to pay monies under the Agreements. The risk that bondholders Continental represents may not be reimbursed is increased if the Villages are not required to pay revenues into the bond fund as permitted by the decision of the Vermont Supreme Court in the *Vermont Dept. of Public Service* case. Virtually nothing other than an actual default could qualify as a more personal stake in the outcome of the case than the potential of losses resulting from the Villages failure to pay. It also follows that, if Continental were to receive the relief it requests, its injury would subside. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Having proved a personal stake in the outcome, a potential inju-

---

**10.** Section 11.4 of the WPPSS Bond Resolution provides, in relevant part, that the Bond Fund Trustee,

> as attorney in fact for the holders of all the Bonds ... shall be entitled and empowered to proceed forthwith to institute such suits, actions and proceedings at law or in equity for the collection of all sums due in connection with the Bonds and to protect and enforce its

> rights and the rights of the holders of the Bonds under the Resolution ... in the enforcement of any other legal or equitable right as the Bond Fund Trustee, being advised by counsel, shall deem most effectual to enforce any of its rights or the rights of the holders of the Bonds....

*In re WPPSS Securities Litigation,* 623 F.Supp. at 1483.

ry-in-fact that is fairly traceable to the conduct of the defendants, and redressability, Continental passes the standing test.

### B. *Choice of Law*

■ Federal common law governs issues of constitutional standing. State law is implicated, however, where the parties dispute issues related to Continental's personal stake in the outcome, more particularly Continental's status as an intended beneficiary of the Agreements and its lack of privity with the Villages. Sitting in diversity, this Court must apply Massachusetts choice-of-law principles. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Computer Systems of America, Inc. v. International Bus. Machines Corp.*, 795 F.2d 1086, 1091 (1st Cir.1986).

■ Massachusetts follows a "functional choice-of-law approach [to contract cases] that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 631, 473 N.E.2d 662 (1985). Consequently, the law of the state with "the strongest interest in the resolution of the particular issue presented," applies to the substantive issues. *Schulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1203 (D.Mass.1982), quoting *Pevoski v. Pevoski*, 371 Mass. 358, 360, 358 N.E.2d 416 (1976). Where, as here, the parties have selected Massachusetts as the forum, their choice will be upheld so long as the result is not contrary to public policy. *Steranko v. Inforex, Inc.*, 5 Mass.App.Ct. 253, 260, 362 N.E.2d 222, 228 (1977) (citation omitted). Forum selection clauses, akin to those present in both the Bond Resolution and the Agreements [11] are not controlling, but are given due deference, together with the other factors that determine a state's interest. However, "the designated State [must have] some substantial relation to the contract," *Steranko, supra,* 5 Mass.App.Ct. at 260, 362 N.E.2d at 228.

■ The Massachusetts Supreme Judicial Court provides instructions on how to determine a state's interest by weighing several factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation, and place of business of the parties. *Bushkin, supra,* 393 Mass. at 632, 473 N.E.2d 662, quoting Restatement (Second) of Conflict of Laws (1971), § 188(2). The test is qualitative rather than quantitative, i.e. the contacts cannot simply be added together but must be weighed, considering also: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Bushkin, supra,* 393 Mass. at 632, 473 N.E.2d 662. Having balanced all of the factors, the Supreme Judicial Court reasoned that a court should choose "that law 'which would carry out and validate the transaction in accordance with [the] intention [of the parties].'" *Id.* at 636, 473 N.E.2d 662, quoting *Boston Safe Deposit & Trust Co. v. Paris,* 15 Mass.App.Ct. 686, 691, 447 N.E.2d 1268, 1270 (1983).

■ Application of these well established choice-of-law principles reveals that the Commonwealth indeed has a substantial interest in enforcement of these Agreements against the defendants, otherwise the step-up provisions will transfer a heavier burden to ratepayers of the many Massachusetts towns and utilities which invested in Seabrook. However, Vermont's interest is still more compelling as it implicates core concerns of state sovereignty *viz.* the state of Vermont's power to control the functioning of its own municipalities.[12] The law of

---

11. Agreement ¶ 19 at 23; Bond Resolution § 13.8 at 110.

12. For a comparable analysis by this Court also resulting in a choice of law at odds with the

Vermont, therefore, must apply to this litigation between Continental and these Vermont Villages.[13]

### C. *The rights of third party beneficiaries under Vermont law*

Continental asserts that its interest in the litigation is as an intended beneficiary of the Agreements. It asserts this interest in the litigation to emphasize its separate identity from the Agency, a party to the earlier Vermont litigation.

■ The Restatement (Second) of Contracts § 302 (1979) entitles a litigant to the rights of an intended third party beneficiary where:

> recognition of a right of performance in the beneficiary is appropriate to effectuate the intention of the parties, and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

The intent of the parties, at the time of contracting, must be to confer a benefit or satisfy a debt to another. *Pike Ind. Inc. v. Middlebury Associates,* 140 Vt. 67, 70–71, 436 A.2d 725, 727 (1981); *Morrisville Lumber Co. Inc. v. Okcuoglu,* 148 Vt. 180, 184, 531 A.2d 887, 890 (1987); *Falzarano v. United States,* 607 F.2d 506, 511 (1st Cir. 1979) (interpreting the National Housing Act, 12 U.S.C. 17151). Continental would not qualify as an intended beneficiary on that basis since, as matter of law, the Agreements were not designed directly to benefit Continental and the bondholders, but were created to promote completion of Seabrook. Review of the Agreements

makes it clear that neither the Agency nor the Villages had either Continental or the bondholders particularly in mind—indeed, the Bond Resolution appears merely to be the result of a particular financing strategy. Admittedly, the parties must have known that bondholders and a bond fund trustee might be employed, but this is legally insufficient to establish Continental as an intended third-party beneficiary.

### D. *Res Judicata*

■ Ruling that Continental is not an intended third party beneficiary is fatal to its claim. Although it has standing and rights to sue under the Bond Resolution, still it needs some relationship to the Agreements—some duty, promise, or conduct owed to it as to which it can here seek a remedy. Absent third party beneficiary status, it can find such rights only in the shoes of the Agency and, after the decision of the Vermont Supreme Court, those shoes are filled with feet of clay. In short, Continental comes into this lawsuit in privity with the Agency from which all its rights derive. Pursuant to 28 U.S.C. § 1738,[14] it is the duty of this Court to give the same full faith and credit to the Vermont disposition as would be accorded by the Vermont courts. *Ohland v. City of Montpelier,* 467 F.Supp. 324, 336 (D.Vt. 1979). *See Prizio v. City of Revere,* 629 F.Supp. 538, 539 (D.Mass.1986), citing *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) and *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 522, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986). In Vermont, the principles of *res judicata* apply when there has been a final adjudication between parties. *Alpstetten Associa-*

applicable forum selection clause, *see Greenwood Trust Co. v. Massachusetts,* 776 F.Supp. 21, 39–42 (D.Mass.1991).

13. While resolution of the choice-of-law issue is necessary for an analytically accurate record, nothing much turns on it as the issues which implicate state law—the rights of third-party beneficiaries and privity—are identical in Vermont and Massachusetts, both states subscribing to the principles of the Restatement (Second) of Contracts. *See Morrisville Lumber Co. Inc. v. Okcuoglu,* 148 Vt. 180, 531 A.2d 887, 890 (1987); *Pike Industries Inc. v. Middlebury Associates,* 140

Vt. 67, 436 A.2d 725, 727–28 (1981); *Plymouth Housing Authority v. Town of Plymouth,* 401 Mass. 503, 505, 517 N.E.2d 470 (1988); *Choate, Hall & Stewart, v. SCA Services, Inc.,* 378 Mass. 535, 542–48, 392 N.E.2d 1045 (1979).

14. Section 1738 provides (in pertinent part):

"Such ... judicial proceedings ... shall have the same full faith and credit in every court with the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken."

*tion, Inc. v. Kelly*, 137 Vt. 508, 513–14, 408 A.2d 644, 646 (1979); *Ohland, supra*, 467 F.Supp. at 335, n. 13. A "substantial identity" must exist between the parties in the first and second actions, placing the two in privity. *Davis v. Saab–Scania of America, Inc.*, 133 Vt. 317, 320, 339 A.2d 456, 458 (1975). Here the Bond Resolution itself, executed by Continental with the Agency, provides that substantial identity. Since Continental was in privity with the Agency, there are sufficient grounds to invoke *res judicata* under Vermont law. Continental simply cannot deny the binding effect of a disposition by the Vermont Supreme Court, interpreting its own law, that these Villages were unable to enter into these Agreements. Consistent with this Court's duty under 28 U.S.C. § 1738, the Vermont disposition, voiding the Agreements, must be given full faith and credit against Continental, extinguishing any cause of action based on the Agreements.

### E. *Conclusion*

Continental has constitutional standing to sue but is estopped by the prior Vermont disposition because it stands in privity with the Agency. Pursuant to the principles of *res judicata* as applied in the state of Vermont, the motion by the Villages to dismiss must be and hereby is, GRANTED.

### V. Analysis—*Continental Bank v. Baker*, Civil Action 90–12941–Y.

### A. *Mootness*

■ In the second case, each of Continental's three theories of liability [15] seeks

---

**15.** Under the first theory (alleged violation of federal securities law), the Court has federal question jurisdiction. Under the two common law theories (fraud and negligence) the Court exercises not pendant but diversity jurisdiction by virtue of the diversity of citizenship between the named Plaintiff, Continental, as Trustee, a citizen of Illinois (and real party to the controversy for purposes of diversity jurisdiction; *see Bullard v. City of Cisco*, 290 U.S. 179, 190, 54 S.Ct. 177, 181, 78 L.Ed. 254 [1933] ), and the Massachusetts participants—Massachusetts municipalities, municipal electric departments, and residents.

**16.** The Massachusetts participants have been paying the step-up charges since the inception of the Massachusetts state court litigation pursuant to a preliminary injunction.

damages for the difference between the price the bondholders paid for the bonds and the price they would have paid if the Massachusetts Participants had divulged their alleged understanding that the step-up provisions were unenforceable and that the Agreements were voidable. In *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 577 N.E.2d 283 (1991), however, the Massachusetts Supreme Judicial Court declared that "the [Seabrook Agreements] executed by the defendants are valid and that the step-up provisions therein have been properly invoked." *Id.* at 62, 577 N.E.2d 283. Since the Massachusetts participants are now bound by court order to honor their agreements in full, nothing remains for this Court to redress in the action before it.[16] Any opinion or judgment by this Court would be gratuitous in the wake of the decision of the Massachusetts Supreme Judicial Court which resolved the case before it in the Agency's—and therefore Continental's—favor.[17] This action is now moot. The bondholders presumably have exactly what they paid for originally.

### B. *Statute of limitations and period of repose (federal securities claims)*

Even were this second action not moot, the federal securities claims (Count I) would, in any event, have to be dismissed as untimely.

■ The proper statute of limitations to be applied to a claim under § 10(b) of the

---

**17.** The Court also notes, without expressing any opinion thereon, that the Massachusetts Torts Claim Act, Mass.Gen.L. ch. 258, § 1 *et seq.*, may severely limit Continental's ability to sue the Participants for the alleged intentional acts of their employees (Count I) on the one hand, and the Individuals for their alleged negligent acts as employees of a public employer (Count III) on the other. *See, e.g., Lane v. Commonwealth*, 401 Mass. 549, 551, 517 N.E.2d 1281 (1988) (denying cause of action for conversion against state agency and noting, "normally a public employer cannot be held liable for intentional torts"); *Carapellucci v. Town of Winchester*, 707 F.Supp. 611, 622 (D.Mass.1989) (recognizing qualified immunity for town officials as necessary "to protect their freedom and discretion in performing their jobs").

Securities Exchange Act is the analogous one-and-three-year limitations and repose structure provided for other causes of action under the Securities Act of 1933 and the Securities Exchange Act of 1934, *Lampf, Pleva, Lipkind, Prupis & Petrigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 2780–82, 115 L.Ed.2d 321 (1991). "Litigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf,* 111 S.Ct. at 2782.

▮▮▮▮ Continental Bank filed its Complaint on December 5, 1990, and a First Amended Complaint on December 12, 1990. It follows that any alleged § 10(b) violations which were discovered previous to the one year prescriptive period beginning on December 6, 1989, or which occurred before December 6, 1987, are time-barred.[18] Continental alleges that misrepresentations in the 1984, 1985, and 1987 Official Statements as well as in the original Agreements misled Seabrook bond purchasers as to the true value of the Bonds. The last time the Agency issued an Official Statement and Seabrook Bonds was in July, 1987. Continental's contention that the three-year period of repose begins anew at every purchase (and repurchase) of the Bonds defeats the purpose of the period's absolute outer limit. *Id.; see Anixter v. Home–Stake Production Co.,* 939 F.2d 1420, 1435–36 (10th Cir.1991). This Court determines that the repose period begins when the last alleged misrepresentation was made by any of the Participants. In this case, that period began prior to December 6, 1987, inasmuch as the Bonds and the accompanying Official Statement were issued in July, 1987. *Greenberg v. Boettch-*

*er & Co.,* 755 F.Supp. 776, 785 (N.D.Ill. 1991) (calculating a period of repose in § 10[b] action from issuance of bonds and accompanying official statement). *See Beard v. J.I. Case Co.,* 823 F.2d 1095, 1097 n. 1 (7th Cir.1987) (period of repose bars suit a fixed number of years after an act by the defendant). Continental's securities claims are thus time-barred under *Lampf.*

Although Continental argues that the *Lampf* rule should not be applied retroactively to this case because it relied on the old state-borrowing rule, the Supreme Court in *Lampf* allied the new rule to the parties before it without qualification, and over a vigorous dissent from Justice O'Connor. *Id.* 111 S.Ct. at 2785–88 (O'Connor, J. dissenting); *see Barr v. McGraw–Hill,* 770 F.Supp. 855 (S.D.N.Y. July 16, 1991) (no "possibility that the majority in *Lampf* intended to leave the door open for prospective application of the new rule in special circumstances"); *see also Anixter v. Home–Stake,* 939 F.2d 1420, 1435–36; *Baggett v. Edward D. Jones & Co.,* No. 90–1054–C, 1991 WL 126602, 1991 U.S.Dist. LEXIS 9118 (D.Kan. June 27, 1991); *Bank of Denver v. Southeastern Capital Group, Inc.,* 770 F.Supp. 595, 596–97 (D.Colo.1991). Continental's contention that *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), stands for the proposition that this Court has equitable discretion to temper the harsh effects of *Lampf* does not withstand scrutiny. *See Boudreau v. Deliotte, Haskins & Sells,* 942 F.2d 497, 497 (8th Cir.1991) (*Lampf* and *James Beam* compel application of *Lampf* rule retroactively). The Supreme Court in *James Beam* explicitly stated that "principles of equality and stare decisis prevail [ ] over any claim based on a *Chevron Oil* [*Co. v. Huson,* 404

---

**18.** Continental's Complaint rests entirely upon the discovery, through previous Massachusetts state court litigation, that the defendants were asserting that the Power Sales Agreements were void, and in the alternative, that the step-up provisions were not enforceable. Those assertions are said to contravene representations in the Official Statements, the Participants' Certificates, and the Power Sales Agreements that each of the Participants would honor its contractual obligations and make step-up payments if any of

the Agreements were not honored for any reason. Since the Massachusetts state court litigation was initiated by the defendants and the Agency in the spring of 1989, Continental knew or should have known of the defendants' contrary assertions which form the basis of its § 10(b) claims before the prescriptive one year period. The Court, however does not rule on this basis because the record is insufficient as to the exact dates and form of all Participants defendants' assertions before December 6, 1989.

U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)] analysis," so that "it is an error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Id.* 111 S.Ct. at 2446.

> Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law are not to be switched on and off according to individual hardship....

*Id.* at 2447–48.

Consequently, the *Lampf* three-year period of repose precludes Continental's § 10(b) claims.

▮ In addition, Continental's § 17(a) claims cannot survive because there is no private right of action under that section. Although the Supreme Court and the First Circuit have declined to consider whether an implied right of action exists under § 17(a), a majority of courts in the circuits and in this district have refused to find such a private right of action. *Norman v. Brown, Todd & Heyburn,* 693 F.Supp. 1259, 1262 (D.Mass.1988) (Skinner, J.) (citing authorities). This Court likewise refuses to do so.

Without a predicate securities violation, the § 20(a) claims for controlling person liability also fail. Accordingly, the federal securities claims in Count I must be dismissed.

### C.  *Conclusion*

Accordingly, the Joint Motion to Dismiss is ALLOWED.