**CENTRAL BANK OF DENVER, N.A., Plaintiff–Appellant,**

v.

**DELOITTE & TOUCHE, f/k/a Deloitte, Haskins & Sells, Defendant–Appellee.**

No. 94CA1609.

Colorado Court of Appeals, Div. I.

March 21, 1996.

Rehearing Denied April 18, 1996.

Certiorari Granted Dec. 3, 1996.

have standing to bring the suit. We dis-agree.

Fairfield and Woods, P.C., Daniel R. Frost, Philip J. Roselli, David L. Joeris, Denver, for Plaintiff–Appellant.

Jay D. Pedelty, Denver, Deloitte & Touche LLP, Eric H. Fisher, New York City, Gia-que, Crockett, Bendinger & Peterson, Rich-ard W. Casey, Steven E. McCowin, Salt Lake City, Utah, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

Plaintiff, Central Bank of Denver, N.A., is an Indenture Trustee (trustee) under two Indentures of Trust (indenture) which se-cured $26 million in bonds to finance public improvements through the Colorado Springs–Stetson Hills Public Building Au-thority (the Authority). Trustee appeals from a judgment of dismissal determining that it lacked standing to bring an action on behalf of certain bondholders filed against defendant, Deloitte & Touche, f/k/a Deloitte, Haskins & Sells. The single issue presented is whether trustee has authority to maintain a tort action against defendant in connection with the issuance of the bonds. We hold that it does not and, thus, affirm.

After a default on interest payments by the Authority, trustee filed suit against de-fendant on behalf of bondholders alleging that the bondholders had sustained substan-tial losses as a result of defendant's negli-gence in an audit of the issuer of the bonds. Defendant moved to dismiss, arguing that trustee did not have authority to raise these claims on behalf of the bondholders.

The trial court agreed and dismissed trust-ee's complaint on the grounds that the inden-ture did not authorize trustee to assert a third-party tort claim on the bondholders' behalf and, alternatively, that trustee lost standing to assert the claim because it creat-ed a conflict of interest while defending itself from suits brought against it by the bond-holders. Trustee appeals, contending that the indenture authorizes it to bring a tort action against a third party on behalf of the bondholders and, consequently, that the trial court erred in finding that trustee did not

## A.

Whether an indenture trustee is au-thorized to sue is determined by the terms of the indenture of trust. See Lorenz v. CSX Corp., 1 F.3d 1406 (3rd Cir.1993) (duties of indenture trustee defined exclusively by terms of indenture, except that trustee must avoid conflicts of interest); Meckel v. Conti-nental Resources Co., 758 F.2d 811, 816 (2d Cir.1985) ("unlike an ordinary trustee . . . an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agree-ment").

Also, while contractual terms should be given their generally prevailing meaning, an integrated contract is to be viewed in its entirety with the end of seeking to harmonize and give effect to all provisions. See Pepcol Manufacturing Co. v. Denver Un-ion Corp., 687 P.2d 1310 (Colo.1984). Fur-ther, interpretation of the indenture is a question of law, subject to de novo review. See Fibreglas Fabricators, Inc. v. Kylberg, 799 P.2d 371 (Colo.1990).

The relevant portions of the indenture here are Article II, "The Bonds" and Article V, "Revenues and Funds," which specify that the bonds are limited obligations payable solely from assessments against development property and other amounts derived from the Financing Documents and the Trust Estate; Article IV, "General Covenants," in which the Authority covenants to pay principal, in-terest, and premiums on the bond, and trust-ee is given explicit authority to take any actions necessary to secure collection from the Authority of funds due under the inden-ture and its financing documents; and Arti-cle VIII, "Default Provisions and Remedies of the Trustee and Bondholders," which de-fines an event of default and sets out the rights and obligations of both trustee and the bondholders with regard to a default.

As pertinent here, § 8.03 of the indenture provides:

Upon the occurrence of an Event of Default, the *Trustee may pursue any available remedy at law or in equity to enforce the payment of the principal of, premium, if any, and interest on the Outstanding Bonds.*

... [I]f requested [by holders of 25 percent of the Outstanding Bonds] the Trustee shall be obligated to exercise such one or more of the rights and powers conferred by Section 8.02 [acceleration of the bonds] or this Section 8.03 [enforcement of payment], as the Trustee ... shall deem most expedient in the interests of the Bondholders.

No remedy by the terms of this Indenture conferred upon or reserved to the Trustee ... is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Trustee

... hereunder or now or hereafter existing at law or in equity. (emphasis added)

█ Trustee contends that § 8.03 gives it express authority to pursue whatever remedy it deems appropriate to provide for payment of principal, premium, and interest to the bondholders. Specifically, trustee argues that a successful third-party tort action would allow it to "enforce the payment" by replenishing the trust assets with a damage award. Defendant counters that the phrase "enforce the payment" was intended to authorize trustee to take action only to compel the Authority—the only entity responsible under the terms of the indenture to provide funds for payment of principal, premium, and interest—to discharge its obligation. We agree with defendant.

By its terms, § 8.03 is not a general authorization for trustee to protect the rights of the bondholders. Rather, it provides only, as pertinent here, that in the event of a default, trustee may pursue any available remedy to accomplish two very specific tasks: either pursue acceleration of the bonds under § 8.02 or enforce payment of the default amount under § 8.03. Since the Authority is the only entity which has agreed to make payments on the bonds, it is the only entity that can be compelled to perform this partic-

ular promise. *See Black's Law Dictionary* 474 (rev. 5th ed.1979) ("enforce" is to compel obedience or to put into execution); *Black's Law Dictionary* 1016 (rev. 5th ed.1979) ("payment" is the fulfillment of a promise or performance of an agreement).

Furthermore, the indenture is explicit as to the source of funds for making the required payments. Section 2.03 of the indenture specifies that the bonds are special, limited obligations creating valid claims in the bondholders "only against the Trust Estate and other moneys held by the Trustee for such purpose under this Indenture." Thus, the indenture recognizes that the bondholders may not be paid if the funds are insufficient, and it creates no absolute duty for trustee to provide payment.

Section 5.01 reiterates the limitation of § 2.03, providing that principal, premiums, and interest are payable "solely from the Allocated Assessment Charges [on development property] and other amounts derived from the Financing Documents and the Trust Estate." Consequently, trustee can "enforce the payment" with funds from a tort damage award only if that award qualifies either as "Allocated Assessment Charges" or money derived from the Financing Documents or the Trust Estate.

Here, it is apparent from the definitions of Article I of the indenture that the tort damage award would not qualify as being derived from either the Allocated Assessment Charges, which are specific assessments made against each parcel of property subject to the Authority, or the Financing Documents. Furthermore, the "Trust Estate" consists of property conveyed by the Authority to trustee pursuant to the granting clauses of the indenture trust. Property includes, with some exceptions not relevant here, "[a]ll moneys and securities from time to time held by the Trustee under the terms of this Indenture." Since the terms of the indenture do not specify that trustee can collect or hold money from a tort damage award, payments of principal, premium, and interest cannot be made, pursuant to § 5.01, from such an award.

Consequently, when examined in the context of the rights and duties of the parties to the indenture and the source of funds for making payments, § 8.03 does not authorize trustee to sue a third-party in tort to remedy a default by the Authority.

### B.

Alternatively, trustee contends that its authority to sue in tort is not limited to the explicit grant of § 8.03 to "enforce the payment." Specifically, trustee argues that § 8.03, in conjunction with § 8.08, implicitly acknowledges trustee's authority to bring a third-party tort action because the claim is for the benefit of the bondholders and it arises under either the indenture or the bonds. We disagree.

As pertinent here, we note the quoted language of § 8.03 which provides that each remedy is to be cumulative of other remedies given the trustee and that any right of action "under this indenture or under any of the bonds" may be enforced by trustee.

■ First, a right of action against a third party does not arise under an indenture or bond simply because the action could not have accrued "but for" the existence of the indenture or bonds. The substantive obligation to audit and disclose material information that trustee seeks to assert against defendant is not defined by the indenture or bonds, but rather by federal and state securities laws and state common law. *See* S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5; *see also In re Equity Funding Corp.*, 603 F.2d 1353 (9th Cir.1979).

■ Thus, although the action is related to the bonds and indenture, it does not, in this situation, "arise under" either. *Compare National City Bank v. Coopers & Lybrand*, 409 N.W.2d 862 (Minn.Ct.App.1987) (tort claims against third persons which are wholly extraneous to the rights and obligations created by the notes and the indenture are not actions "under the indenture," or "on the notes") *and Continental Bank, N.A. v. Caton, DBLKM, Inc.* Fed. Sec. L. Rep. (CCH) ¶ 95,623, 1990 WL 129452 (D.Kan. Aug. 6, 1990) (authority to pursue "all rights of action" "under this indenture or under any of

the Bonds" does not give authority to sue in tort) *with Continental Bank v. Village of Ludlow*, 777 F.Supp. 92, 97 (D.Mass.1991) (tort arises under indenture when trustee authorized to protect and enforce "the rights of the holders of bonds ... to collect any amount due and owing from [the Agency] or ... to obtain other appropriate relief") *and In re Washington Public Power Supply System Securities Litigation*, 623 F.Supp. 1466, 1483 (D.Wash.1985), *aff'd*, 823 F.2d 1349 (9th Cir.1987) (tort arises under indenture when trustee generally authorized "to protect and enforce its rights and the rights of the holders").

■ Furthermore, while a tort suit against a third party may be in the best interest of the bondholders, dismissal of trustee's tort claim will not necessarily render a disservice to the bondholders. Dismissal for lack of standing would not preclude tort claims against the defendant; it would simply require that the bondholders, rather than trustee, pursue their claims.

In addition, even assuming a third-party tort suit were in the bondholders' best interest, we reject trustee's contention that *In re Petition of First Interstate Bank, N.A.*, 767 P.2d 792 (Colo.App.1988) requires that all such actions be permitted under the indenture here.

In *First Interstate Bank, supra*, a division of this court assessed the propriety of the probate court's decision to permit a trustee to employ a particular remedy, not explicitly listed in the indenture, to implement the undisputed purpose of the trust. In doing so, the court interpreted language similar to that of § 8.03 to mean that the list of remedies in that particular indenture was inclusive rather than exclusive, such that the trustee was not limited to an explicitly listed remedy to implement the trust purpose. The court also noted that, although a probate court does not necessarily abuse its discretion by approving "actions not expressly within, or even forbidden by, the terms of the trust if necessary to accomplish the purpose of the trust," a trustee may not, *sua sponte*, do that which is prohibited by the indenture.

Here, the purpose of the indenture is to assure payment of principal, premium, and interest, and the "cumulative" or "additional" remedies referenced in § 8.03 are specifically remedies to enforce that payment or accelerate the bonds. Consequently, to the extent trustee may be authorized, under *First Interstate Bank, supra,* to employ remedies not explicitly listed in the indenture, such authority is limited to accomplishing those purposes.

Furthermore, § 8.03 does not authorize trustee to use remedies that are not permitted by the terms of the trust. Because the indenture explicitly restricts the source of funds available for payment of principal, premium, and interest, § 8.03 does not authorize use of a third-party tort damage award for that purpose.

Finally, here, unlike in *First Interstate Bank, supra,* interpreting § 8.08 to authorize a third-party tort action that is not specifically intended to facilitate payment of principal, premium, and interest leads to inequitable and unreasonable results under the indenture. *See Sunshine v. M.R. Mansfield Realty, Inc.,* 195 Colo. 95, 575 P.2d 847 (1978).

Section 8.08 requires that "any recovery of judgment shall be for the equal and ratable benefit of the owners of the Outstanding Bonds." An "equal and ratable" distribution of a tort award would be reasonable if intended to pay principal, premium, and interest since all bonds are of equal stature. However, an "equal and ratable distribution" would not be consistent with the interests of persons injured in tort, if, as here, injury would vary from plaintiff to plaintiff depending on if and when each bondholder relied on defendant's audit information.

While trustee recognizes this peculiar consequence, it argues, again relying on *First Interstate Bank, supra,* that it has the power to use remedies that favor one bondholder at the expense of another if such remedy is necessary to serve the interests of the trust beneficiaries. We do not agree. While the decision in *First Interstate Bank* allowed bondholders to be afforded differential treatment, it does not support trustee's contention here.

*First Interstate Bank* involved two different classes of bondholder. There, by buying subordinate bonds, one class of bondholder elected to risk treatment which would secure payment of other bondholders at their own expense. Here, all bondholders are equal and there is no basis in the record for inferring a consent to differential treatment. While bondholders injured in tort undoubtedly could agree to forego a portion of their own damage award, we will not infer such agreement from an indenture clause which purports to give "equal" treatment.

Because of our disposition of this matter on the ground that trustee does not have authority to sue, we need not address the trial court's alternative ruling.

The judgment is affirmed.

METZGER and RULAND, JJ., concur.